UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JULIE A. BEBERMAN,

    *Plaintiff*,

v.

MARCO RUBIO et al.,

    *Defendants*.

Civil Action No. 24-1710 (TJK)

## MEMORANDUM OPINION

    The Department of State did not offer Julie Beberman tenure as a Foreign Service Officer. Since receiving that news, she has filed a host of lawsuits challenging how the agency handled that decision and her administrative challenge of it. Now, she takes aim at the end of this administrative saga by alleging that several errors rendered unlawful the second round of review that she received before reconstituted tenure boards.

    The Court lacks jurisdiction to address these challenges. For the Foreign Service Act to provide for judicial review, Beberman must contest a final agency action *on a grievance*. But that final action happened when the agency's grievance board issued its final decision on her grievance in 2021—before the alleged errors involving the reconstituted tenure boards, and well outside the 180-day statutory deadline to file suit. Nor does the Administrative Procedure Act offer refuge. Under binding precedent, the comprehensive review scheme within the Foreign Service Act bars access to the more general judicial-review provisions of the APA. So the Court will grant the Department's motion and dismiss Beberman's complaint.

I.      **Background**

Beberman used to work for the State Department's Foreign Service. *See* ECF No. 1 ("Compl.") ¶ 1. She started as a Diplomatic Security Engineering Officer there in early 2010. *See id.* ¶¶ 14–15. Although the agency described this position as a "Foreign Service Specialist limited career appointment" not to exceed four years, *see id.* ¶ 16, within about a year Beberman had applied for and been appointed to "the position of Foreign Service Officer," *id.* ¶¶ 19, 21–22. In that role, she would be a "candidate" for up to five years or until a tenure board made a final decision on her candidacy. *Id.* ¶ 23. And candidates like Beberman "are considered for tenure by up to three" boards during their "limited appointments." *Id.* ¶ 27.

Because none of those three boards recommended Beberman for tenure, she was "designated for separation." Compl. ¶ 28. She filed a grievance with the Department challenging that outcome, partially because she thought that the tenure boards "were not properly composed." *Id.* ¶ 29. Her grievance headed toward the Foreign Service Grievance Board, which denied her request for "interim relief from separation in 2019." *Id.* ¶ 33. And that year marked the end of her time as a Foreign Service Officer career candidate: "she was forced to involuntarily retire" on October 31, 2019. *Id.* ¶ 34; *see also id.* ¶ 180. But in a July 2021 decision, the Grievance Board agreed with Beberman that her tenure boards were procedurally flawed. The Service's regulations require that each board "be composed of six members" with one member not "employed by the Department," but Beberman's boards had five Department employees without the required sixth non-Department member. *See id.* ¶ 35; *see also In the Matter Between Grievant and Dep't of State*, FSGB No. 2016-036 ("Grievance Board Final Decision"), at 12 (July 15, 2021). So the Grievance Board, while denying Beberman's reinstatement request, "direct[ed] the Department to convene" up to three "reconstituted" tenure boards to consider her candidacy. *See* Grievance Board Final Decision at 19–20. Those reconstituted boards convened sometime between the Grievance

2

Board's 2021 decision and February 2024, when according to Beberman the "Department conveyed its final decision" that none of the new boards had recommended her for tenure. *See* Compl. ¶¶ 37–38.

Beberman added to her running list of lawsuits by filing this one against the State Department and its secretary in June 2024. *See generally* Compl. She brings seven "counts" alleging that the agency acted arbitrarily and capriciously or otherwise unlawfully. First, she challenges the Department's refusal to provide her "with the reasons" underlying the reconstituted tenure boards' decisions not to recommend her for tenure. *Id.* ¶ 39. Second, she says that the Department arbitrarily and capriciously gave those boards both too much and too little information to consider. *See id.* ¶ 40. The boards allegedly should not have reviewed (but did review) "evaluative material" about "her service as a Foreign Service Specialist," and they should have had (but lacked) access to materials about "her service" after "November 1, 2015." *Id.* Third, she alleges that a particular reconstituted tenure board glossed over whether Beberman "had overcome any early weakness" and whether she lacked "the opportunity to show certain skills." *Id.* ¶ 41. Fourth, that same tenure board allegedly used improper "companion files"—that is, randomly selected tenure applications meant to make it harder for the tenure board to identify the person who had challenged the agency's earlier action. *Id.* ¶¶ 42, 225. Fifth, Beberman says that the Department also acted arbitrarily and capriciously by changing certain dates about administrative processing within her employee evaluations, which she claims also made her grievant status more apparent. *Id.* ¶¶ 43, 244. Sixth, the Department allegedly refused to disclose the "complete" demographic information of the members of the reconstituted tenure boards, another arbitrary and capricious decision in Beberman's telling. *Id.* ¶ 44. Seventh and finally, Beberman claims that the Department unlawfully "separated her before" a "properly composed" tenure board reviewed her candidacy. *Id.* ¶ 45. The Department,

3

in other words, allegedly could not have lawfully separated her when it did in late 2019 but needed to wait until February 2024, after the reconstituted tenure boards made their call. *See id.* ¶¶ 271–73.

The Department moves to dismiss for jurisdictional and non-jurisdictional reasons. *See* ECF No. 10. On the former, the agency contends that neither the Foreign Service Act of 1980 nor the Administrative Procedure Act permits review of Beberman's claims. But those claims would falter on the merits anyway, the Department says, because some fall to issue preclusion and others for failure to state a claim.

## II.    Legal Standards

A plaintiff must establish the Court's subject-matter jurisdiction to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Because "sovereign immunity is a jurisdictional issue," *Hulley Enters. Ltd. v. Russian Fed'n*, No. 23-7174, 2025 WL 2216545, at *6 (D.C. Cir. Aug. 5, 2025), courts apply Rule 12(b)(1) to motions to dismiss invoking it, *see Black Lives Matter D.C. v. United States*, 775 F. Supp. 3d 241, 262–63 (D.D.C. 2025). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' . . . and upon such facts determine[s] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Without subject-matter jurisdiction over a claim, the Court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when he pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "although a pro se complaint" like Beberman's "must be construed liberally, the complaint must still present a claim on which the Court can grant relief." *Untalasco v. Lockheed Martin Corp.*, 249 F. Supp. 3d 318, 322 (D.D.C. 2017) (citation omitted).

### III.   Analysis

Beginning as it must with jurisdiction, the Court ends there too. Beberman cannot bring her claims under the Foreign Service Act. And binding precedent holds that the review procedures within that statutory scheme displace those under the APA, so that catch-all statute is no help to Beberman. As the precedent instructs, the Court will dismiss her complaint for lack of subject-matter jurisdiction.

### A.   The Foreign Service Act Does Not Permit Review of Beberman's Claims

By enacting the Foreign Service Act of 1980, Congress created a system to "review[] allegedly adverse actions taken against" "foreign service officers." *Am. Foreign Serv. Ass'n v. Trump*, 768 F. Supp. 3d 6, 20–21 (D.D.C. 2025). The statutory scheme starts with a qualifying grievance and ends with the potential for judicial review. With some exceptions, the Act defines "grievance" broadly: "any act, omission, or condition subject" to the Secretary of State's "control" that "is alleged to deprive a member of the Service" of "a right or benefit"—or, more generally, that "is otherwise a source of concern or dissatisfaction to the member." 22 U.S.C. § 4131(a)(1). Typically, the Grievance Board makes the final decision on a grievance within the administrative-review scheme. *See id.* § 4137(c). But for some decisions, the Secretary "shall make a written

decision on" the Grievance Board's recommendation. *Id.* § 4137(d)(1). Once the Secretary or Grievance Board takes "final action . . . on a[] grievance," the "aggrieved party may obtain judicial review" if he requests it no later than "180 days after the final action." *Id.* § 4140(a).

This path to judicial review, though, is not always available. The Act excludes some agency actions—like "the judgment of a . . . tenure board"—from the definition of "grievance," meaning these actions cannot make it to the Grievance Board or to judicial review through that process. 22 U.S.C. § 4131(b). More relevant here, Congress limited the grievances that "*former* member[s] of the Service" can bring: "only" those alleging the "denial of an allowance, premium pay, or other financial benefit." *Id.* §§ 4131(a)(1)(G), 4132 (emphasis added). That carveout permits former "foreign service officers to file grievances related to their post-employment benefits." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 169 n.3 (D.D.C. 2007). But outside this "narrow[]" exception, "former members of the Foreign Service" cannot bring grievances through this statutory process culminating in judicial review. *In the Matter Between Grievant and Dep't of Comm.*, FSGB No. 2012-021, at 6–7 (Aug. 17, 2012); *see also, e.g.*, *In the Matter Between Grievant and Dep't of State*, FSGB No. 2018-017, at 8 (Sept. 5, 2018) (explaining that the Board lacks "jurisdiction" over a claim by "a former employee of the Department"). Beberman recognized as much in her complaint: as "a former member," she "is barred from bringing the matters alleged . . . through the grievance procedures included in the Foreign Service Act." Compl. ¶ 7.

So how does Beberman turn around and contend that judicial review under § 4140 is available? Charitably read, her opposition presents two theories. First, she might be suggesting that such review is available for any final action by the Secretary—no matter whether that action was "on any grievance." 22 U.S.C. § 4140(a). Second, she argues that the Secretary did take final action "on a grievance"—the one that led to the Grievance Board's final decision in 2021—

through the reconstituted tenure boards, because there was nothing else she could do after those boards deferred and ultimately denied her tenure. Neither contention gives her access to judicial review under the Foreign Service Act.

To begin, Beberman insists that the reconstituted boards' "decisions deferring and denying" her "tenure are final actions of the Secretary" and are thus reviewable. ECF No. 14 at 4. But § 4140(a) requires more. That provision, recall, provides for "judicial review of a final action of the Secretary or the Board *on any grievance*." § 4140(a) (emphasis added). And this "on any grievance" language means that the *kind* of final action by the Secretary or the Grievance Board needed to unlock judicial review has not happened as to Beberman's claims.

Beberman would have an argument if "on any grievance" modified only final action by "the [Grievance] Board" and not by "the Secretary," *see* § 4140(a), but the statute does not support that interpretation. The grammatical structure—"noun one or noun two," followed by a modifying clause—is familiar. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 402–03 (2021). And it often leads to a common-sense interpretation: the "modifier at the end of the list 'normally applies to the entire series'" when "there is a straightforward, parallel construction that involves all nouns" in the "series." *Id.* at 402 (quoting Antonin Scalia & Bryan Garner, Reading the Law: The Interpretation of Legal Texts 147 (2012)). Dubbed the "series-qualifier canon" in legalese, this "interpretive rule" just "reflects the most natural understanding" of most sentences connecting nouns or verbs. *Id.* at 403. Imagine a college syllabus explaining that "you must give an oral presentation or write a paper on a topic involving United States foreign policy." Given that structure, "[i]t would be strange to read" this instruction as prescribing the permissible topics for papers but not presentations. *Id.*

It would also be strange to read "on any grievance" as applying only to final action by the Grievance Board, so § 4140(a) is best understood to authorize judicial review of final action by the Secretary only if that action is on a grievance. For one thing, "the modifier at issue immediately follows a concise, integrated clause": final action of the Secretary or the Grievance Board. *Duguid*, 592 U.S. at 403. That clause "hangs together as a unified whole, using the word 'or' to connect two" nouns within a prepositional phrase. *Id.* (citation omitted). And this unified phrase appears elsewhere in § 4140(a)—the request for judicial review, for instance, must be filed within 180 days of "the final action of the Secretary or the Board," § 4140(a)—further showing how "odd" it would be "to apply the modifier" (on any grievance) "to only a portion of this cohesive preceding clause." *Duguid*, 592 U.S. at 403. For another, an interpretation authorizing judicial review for *all* final actions by the Secretary would clash with focus of the subchapter, which is titled "grievances." *See* 22 U.S.C. Ch. 52 Subch. XI. While perhaps not a true (or fully grown) "elephant[] in" a "mousehole[]," such sweeping review would depart from an otherwise focused and precise statute detailing *grievance* procedures for a subset of employees. *Banks v. Booth*, 3 F.4th 445, 449 (D.C. Cir. 2021).

Finally, applying the "on any grievance" modifier to final action by the Secretary harmonizes § 4140 and § 4137. Under the statutory scheme, "decisions of the [Grievance] Board" are generally "final" and thus "subject" to "judicial review" under "section 4140." 22 U.S.C. § 4137(c). That explains why § 4140(a) provides for judicial review of final actions by the Grievance Board. But the grievance-and-review structure also contemplates that the Secretary will sometimes be the final actor on a grievance. For example, if the Grievance Board "finds that the evidence . . . warrants disciplinary action," it must "make an appropriate recommendation to the Secretary." *Id.* § 4137(d)(1). The Secretary, in turn, must "make a written decision on the

recommendation." *Id.* And *that* provision for Secretary action *on a grievance* explains why § 4140(a) covers the waterfront of possible final decisionmakers by mentioning the Secretary for purposes of judicial review. But for all the reasons discussed, this reference to the Secretary authorizes such review only for final action on a grievance, whether by the Secretary or the Board. So Beberman comes up short with her theory that final action by the Secretary is enough.[1]

She fares no better by slightly switching gears and contending that the Secretary *did* take "final action . . . on a grievance" when the reconstituted tenure boards deferred and denied her application. ECF No. 14 at 5. Though not spelled out, her reasoning seems to be that the actions of the reconstituted boards represented final action by the Secretary on the grievance that Beberman filed after the original boards did not recommend her for tenure. But Beberman cannot bootstrap her challenges to how the reconstituted boards assessed her candidacy into the grievance that had been decided when those boards convened. Instead, the Grievance Board took final action on that grievance in 2021 when it "granted in part and denied in part" her "grievance appeal." Grievance Board Final Decision at 19. That "decision" was "in writing," "decide[d] the grievance," and told Beberman what she was (and was not) entitled to, so it was "final" and "subject" to "judicial review" under "section 4140." 22 U.S.C. § 4137(a), (c). Indeed, this Court has already explained that the Grievance Board "concluded that the relevant matters before it were closed" and thus that

---

[1] Beberman cites a 30-year-old case from this District that she says "found . . . jurisdiction because the Secretary had issued a final decision." ECF No. 14 at 7 (citing *Goldsmith v. Christopher*, 897 F. Supp. 6 (D.D.C. 1995)). "Found" is a bit of a misnomer; the court in *Goldsmith* never analyzed jurisdiction, perhaps because the Supreme Court had not yet rejected—at least not clearly—the idea that courts could "decid[e] the merits" while "assuming jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation marks and citation omitted). In any event, § 4140(a) restricts judicial review to cases challenging a final action by the Secretary or the Grievance Board on a grievance. So even if *Goldsmith* could be read to support Beberman's suggestion that "a former Service member" can bring "a complaint directly in district court" under that provision, the Court follows the statutory text rather than this non-binding decision. ECF No. 14 at 7.

it "lacked jurisdiction over" Beberman's request for "relief related to the reconstituted Tenure Boards' consideration of her candidacy." *Beberman v. Rubio*, No. 22-cv-144, Minute Order of June 21, 2023.[2]  In this way, by challenging how the reconstituted tenure boards acted on her tenure candidacy *after* the Grievance Board's final decision, Beberman is not "seeking review of that" final "decision" on her grievance. *Id.*  Nor has she identified another final action *on that grievance*—which the Grievance Board treated as "closed and no longer pending" by April 2023 at the latest—that might permit judicial review under § 4140(a) for challenges to issues related to how the reconstituted boards proceeded. *Beberman v. Rubio*, No. 22-cv-144, ECF No. 37-14.

Beberman, then, has not alleged facts suggesting that she can use § 4140(a) to obtain judicial review of her claims premised on those proceedings.  And that covers almost all her allegations.  Six of the seven counts are different ways of saying that either the Department generally or the reconstituted tenure boards specifically acted arbitrarily or capriciously during this process that occurred after her separation and after the Grievance Board's final decision.  To start, Count 1 challenges the Department's refusal to provide the reconstituted boards' reasoning. *See, e.g.*, Compl. ¶ 48.  Count 2 also takes aim at this process by contending that the reconstituted boards did not review the right materials. *See, e.g.*, *id.* ¶ 92.  More of the same for Count 3, which says that the "reconstituted" boards did not "consider whether" Beberman "had overcome early weakness and lacked opportunity to show certain skills." *Id.* at 35.  Count 4, for its part, takes a different route to the same destination: the reconstituted boards' review was faulty because they lacked "proper companion files" to "make it more difficult" to "determine which file" was the grievant's.

---

[2] The Court may "take judicial notice of the dockets in other judicial proceedings." *Amobi v. Brown*, 317 F. Supp. 3d 29, 35–36 (D.D.C. 2018).  Doing so for these "facts on the public record" is permissible when deciding "a motion to dismiss." *Covad Cmmc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (citation omitted).

*Id.* at 42; *id.* ¶ 225. In Count 5, Beberman claims that the Department "arbitrarily and capriciously denied" her "request to correct" certain "dates" on her employee evaluation. *Id.* ¶ 243 (citing "Exhibit 15"). She made that request after the Grievance Board's final decision on her grievance, *see* ECF No. 5-15 at 12–13 (labeled "Exhibit 15"), meaning that any allegedly unlawful denial would have happened after that final action too.[3] Finally, Count 6 alleges that the Department did not provide Beberman with the demographic and professional information that she asked for about the members of the reconstituted boards. *See, e.g.*, Compl. ¶¶ 257–69. So none of these counts seeks review of final action on the grievance that led to the 2021 Grievance Board decision.

Count 7 is different, but not in a way that helps Beberman. She says that the "Department arbitrarily and capriciously terminated [her] limited career appointment on October 31, 2019" because no "properly composed" tenure board had considered her candidacy by then. Compl. ¶ 272. It is unclear whether this complaint formed part of her grievance that the Grievance Board resolved in July 2021. If it did not, then this claim does not challenge a final action on a grievance. And if it did, then the claim is time-barred because § 4140(a) permits review only if the "aggrieved party" files a complaint "not later than 180 days after the final action"—a missed deadline for Beberman, who filed this suit almost three years after the Grievance Board's final decision. *Compare* Compl. (filed June 7, 2024), *with* Grievance Board Final Decision (issued July 15, 2021). So judicial review under § 4140(a) is unavailable either way.[4]

---

[3] Beberman filed a host of exhibits that she cites in her complaint, and the Court may consider them when assessing the motion to dismiss. *See Jud. Watch, Inc. v. FBI*, No. 18-cv-2316 (RC), 2019 WL 4194501, at *1 n.1 (D.D.C. Sept. 4, 2019).

[4] As explained below, the Court heeds Circuit precedent and dismisses for lack of jurisdiction rather than for failure to state a claim. And whether Count 7 falters under § 4140(a) for the reason the other counts do—*i.e.*, no final action on a grievance—or because of the 180-day deadline, the dismissal remains jurisdictional. Indeed, "[c]ourts have recognized that" this "filing deadline is jurisdictional." *Kerr v. U.S. Dep't of State*, 305 F. Supp. 3d 1, 5 (D.D.C. 2018). The D.C.

**B.      The Administrative Procedure Act Does Not Fill the Reviewability Gap**

The APA does not provide for review of Beberman's claims either. That statute "does not confer jurisdiction," but its "judicial review provisions" create a "cause of action for parties adversely affected by agency action." *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006). In some sense, then, the "APA" operates as a "catchall" review statute. *Lacson v. DHS*, 726 F.3d 170, 176 (D.C. Cir. 2013).

But Congress can preclude APA review by enacting a "comprehensive and integrated review scheme" in another statute. *United States v. Fausto*, 484 U.S. 439, 454 (1988). For example, the Civil Service Reform Act of 1978 "carefully constructed a system for review and resolution of federal employment disputes." *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009). The D.C. Circuit has explained that this statutory review scheme reflects Congress's decision to "intentionally provid[e]—and intentionally not provid[e]—particular forums and procedures for particular kinds of claims." *Id.* And following the Supreme Court's lead, *see Fausto*, 484 U.S. at 455, the Circuit has "held" that this "comprehensive" scheme "preempts judicial review under the more general APA *even when that scheme provides no judicial relief*." *Filebark*, 555 F.3d at 1010 (emphasis added). Put bluntly, if a comprehensive statutory scheme shows that

---

Circuit has also affirmed a dismissal that described the § 4140(a) deadline as "jurisdictional" without casting doubt on that aspect of the lower court's decision. *See Egan v. Natsios*, No. 01-cv-2414 (JGP), 2003 WL 24289778, at *3 (D.D.C. Aug. 7, 2003), *aff'd sub nom. Egan v. U.S. Agency for Int'l Dev.*, 381 F.3d 1 (D.C. Cir. 2004). No doubt, the Supreme Court has tightened the jurisdictional label, which federal courts have "more than occasionally misused." *Wilkins v. United States*, 598 U.S. 152, 159 (2023). And given that course correction, the time bar in § 4140 might be considered a "nonjurisdictional claims-processing rule[]" that just tells "parties to take certain procedural steps at certain specified times." *Robinson v. Dep't of Homeland Sec. Off. of Inspector General*, 71 F.4th 51, 56 (D.C. Cir. 2023) (cleaned up and citation omitted). But Beberman has not argued that the time limit in § 4140(a) is not jurisdictional, so she has "waived" this potential "argument[] in favor of subject matter jurisdiction." *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008).

Congress wanted to preclude other judicial review, "what you get under" that scheme "is what you get." *Id.* (quoting *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005)).

The Circuit has also analyzed the Foreign Service Act under this framework and reached a similar result. In *United States Information Agency v. Krc*, the plaintiff—a former Foreign Service Officer—claimed that the agency retaliated against him for filing a grievance. 989 F.2d 1211, 1217 (D.C. Cir. 1993). That "alleged reprisal occurred after" his "Foreign Service appointment had been terminated," so § 4132's limitation on grievances by former Service members "barred" him from "seeking an administrative remedy for" that "claim." *Id.* But the unavailability of that relief did not necessarily mean that the plaintiff had another path to judicial review. To the contrary, Congress's decision to "withhold[] an administrative remedy from a former" Foreign Service Officer showed that "Congress intended also to deny him a judicial remedy." *Id.* After all, the Foreign Service Act—like its "companion measure," the Civil Service Reform Act—"provides a 'comprehensive system for reviewing personnel action[s] taken against federal employees.'" *Id.* (first quoting S. Rep. 96-913, *reprinted in* 1980 U.S. Code Cong. & Admin. News 4419; and then quoting *Fausto*, 484 U.S. at 455). So the Circuit held that this reticulated statutory scheme revealed "a congressional judgment that" the "former" Foreign Service member "should not be able to demand judicial review" for his retaliation claim. *Id.* (quoting *Fausto*, 484 U.S. at 448).

*Krc* forecloses Beberman's argument that she may obtain review through the APA. That decision holds that a Foreign Service member (or former one) cannot end-run the limitations within the Foreign Service Act's review scheme. Instead, the member must bring a grievance—subject to the limitations and "procedures" that "Congress" chose to impose—through that scheme and then to court under § 4140. *Filebark*, 555 F.3d at 1014. Beberman has not done that, so the APA is no fallback even if her claims otherwise meet the APA's requirements.

13

Trying to sidestep *Krc*, Beberman comes up short.  She contends that Congress did not intend "to bar" former Foreign Service members "from any form o[f] relief."  ECF No. 14 at 8.  Beberman presses this theory by relying on the dissent from *Fausto*, *see id.*, a perilous starting point "unless we wish anarchy to prevail within the federal judicial system," *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam) (explaining that "lower federal courts" must follow Supreme Court precedent).  In any event, *Krc* said the opposite about Congress's "inten[t]": by "withholding an administrative remedy from a *former*" Foreign Service Officer, Congress meant to "deny him a judicial remedy" too.  989 F.2d at 1217 (emphasis added).

Perhaps recognizing as much, Beberman next asks the Court to ignore *Krc*'s binding effect "to the extent the D.C. Circuit . . . relied on" *Fausto*.  ECF No. 14 at 10.  Determining that reliance requires little guesswork: *Krc* leaned heavily on *Fausto* because that Supreme Court decision analyzed whether (and held that) a "companion measure" to the Foreign Service Act was so comprehensive as to "display[] a clear congressional intent to deny . . . judicial review" for certain claims.  *Krc*, 989 F.2d at 1217.  And Congress's decision to revise the Civil Service Reform Act in 1990 to account for *Fausto* does not "effectively overturn[]" that decision.  ECF No. 14 at 9–10.  Rather, as courts acknowledge, *Fausto* remains good law.  *See, e.g.*, *Fornaro*, 416 F.3d at 66–69 (relying on *Fausto* to decide whether a judicial-review procedure was "exclusive" such that "additional rights to judicial review" may not be "recogni[zed]"); *Am. Foreign Serv. Ass'n*, 768 F. Supp. 3d at 21 (acknowledging *Krc*'s reliance on *Fausto* and explaining that "where the [Foreign Service Act] prohibits a certain category of administrative grievance, a foreign service officer may not 'demand judicial review' for that same harm").  In the end, this Court "must follow controlling precedent" like *Krc* "until it has been overruled by a court empowered to do so," no matter how

flawed Beberman thinks that decision is. *Bauer v. DeVos*, 325 F. Supp. 3d 74, 91 (D.D.C. 2018). So it will dismiss Beberman's complaint for lack of jurisdiction.[5]

Beberman may think this result is harsh. But time and again, the D.C. Circuit has explained that a "comprehensive and exclusive" review scheme is just that—"the exclusive avenue for suit *even if* the plaintiff cannot prevail in a claim under" that review scheme. *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) (Kavanaugh, J.) (emphasis added). And that rule applies to "the more general APA," which does not permit "judicial review" when a "comprehensive" scheme like the one within the Foreign Service Act applies. *Filebark*, 555 F.3d at 1010 (reiterating that this preemption of judicial review applies "even when that scheme provides no judicial relief").[6] Thus, the APA does not fill the reviewability gap for Beberman's claims.

## IV.   Conclusion

For all the above reasons, the Court will grant Defendants' motion to dismiss. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 3, 2025

---

[5] The Court tracks *Krc* by dismissing for lack of jurisdiction rather than a cause of action. In holding that Congress precluded other paths to judicial review by enacting the review scheme within the Foreign Service Act, the *Krc* panel explained that the "district court correctly held that it lacked jurisdiction over" the relevant "claim." 989 F.2d at 1217.

[6] The Foreign Service Act does not necessarily preclude *all* alternative paths to judicial review. As the Circuit recently explained, comprehensive statutory review schemes can "preclude" suits under "general, catchall statutes" like the APA but might not displace federal statutes targeting "specific evils"—*i.e.*, statutes that "do not suffer from the same 'defect of generality' as the APA." *Lucas v. Am. Fed. of Gov. Emps.*, Nos. 23-7051, 23-7054, 2025 WL 2371197, at *10–11 (D.C. Cir. Aug. 15, 2025). So this "statute-specific analysis" of "preclusion" might yield different results outside the APA context. *Id.* at *11.